UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STATE OF NEW YORK and ERIN M. CROTTY,
Commissioner of the New York State
Department of Environmental Conservation,

                Plaintiffs,

      v.                                                        **DECISION AND ORDER**
                                                               02-CV-24S

NIAGARA MOHAWK POWER CORPORATION,
NRG ENERGY, INC.,
NRG NORTHEAST GENERATION,
NRG DUNKIRK OPERATIONS, INC.,
DUNKIRK POWER, LLC,
NRG HUNTLEY OPERATIONS, INC.,
HUNTLEY POWER, LLC,
NRG NORTHEAST GENERATING, LLC,
NRG EASTERN, LLC, and
NRG OPERATING SERVICES, INC.,

                Defendants.

      1.      On April 7, 2005, Plaintiffs filed a Motion to Approve consent decrees that were lodged with this Court on January 11, 2005, in full settlement of the instant litigation.[1] All parties filed memoranda supporting approval of the consent decrees.  After reviewing those submissions and having counsel appear on the motion on May 12, 2005, this Court issued an Order on June 6, 2005, approving the consent decrees with decision to follow. The following are this Court's reasons for approving the consent decrees.

      2.      This action was commenced by Plaintiffs on January 10, 2002, under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7401 et seq.  The underlying suit involves the State's efforts to reduce hazardous emissions from the Dunkirk and Huntley

---

[1]There are two consent decrees in this case.  The first one covers Niagara Mohawk; the second one covers the NRG Defendants.  Both consent decrees are filed at Docket No. 129 as attachments to the Notice of Settlement.

power plants.  Plaintiffs alleged that these emissions are attributable, at least in part, to modifications that were made to the facilities without the proper permits and without implementation of pollution emissions controls required by federal and state law.

3.      Approval of a proposed consent decree falls squarely within the court's discretion and should be considered in light of the strong policy of encouraging voluntary settlement of litigation.  See United States v. Hooker Chems. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985).  In examining a proposed consent decree in the environmental context, a court must satisfy itself that the settlement is reasonable, fair, and consistent with the purposes of the statute under which the case was brought.[2]  See United States v. Alliedsignal, Inc., 62 F.Supp.2d 713, 719 (N.D.N.Y. 1999) (citing United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990)).  "It is well settled that the function of the reviewing court is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy."  United States v. Hooker Chems. & Plastics Corp., 540 F.Supp. 1067, 1072 (W.D.N.Y. 1982).  This Court is satisfied that the consent decrees meet these requirements.

4.      The Clean Air Act was enacted in 1955.  Congress has since enacted significant amendments to the Act, most notably in 1970, 1977 and 1990.  The federal regulations implementing the Clean Air Act are codified at 40 C.F.R. § 50 et seq.  Though

---

[2]Of course, the general requirements governing approval of a consent decree must also be satisfied.  That is, the proposed consent decree must (1) arise from and resolve a dispute over which the court has subject matter jurisdiction, (2) fall within the scope of the case made by the pleadings, and (3) further the objective of the law upon which the complaint was based.  See Kozlowski v. Coughlin, 871 F.2d 241, 244 (2d Cir. 1989); United States v. City of New York, 30 F.Supp.2d 325, 330-31 (E.D.N.Y. 1998). This Court finds that the consent decrees fulfill these general requirements.

somewhat of a work in progress, the objective of the Clean Air Act has remained constant: for the federal government to work with the states to promote the public health and welfare by protecting and enhancing the quality of the nation's air, and to encourage and assist in the development and operation of regional air pollution prevention and control programs. 42 U.S.C. §§ 7401(b)(1) and (4).

While the Clean Air Act is a piece of federal legislation, the Act itself recognizes that air pollution prevention and control measures must be directed at the source of the pollution.  42 U.S.C. § 7401(a)(3).  Primary responsibility for implementation of the Act therefore falls on state and local governments.  Id.  Accordingly, the interplay and cooperation of the federal and state governments is crucial to meet the objectives of the Act.  See, e.g., 42 U.S.C. § 7402.

5.     This Court finds that the settlement as reflected in the consent decrees is reasonable, fair and consistent with the purposes of the Clean Air Act.  This Court first finds that the consent decrees are reasonable.  Plaintiffs recognize that some of their allegations raise questions of first impression, such as whether the NRG Defendants can be held liable under the Act for modifications that were made prior to their ownership of the facilities.  Due to the lack of precedent, there is some risk that Plaintiffs' arguments would not be successful.  In addition, if Plaintiffs failed to prove a violation at even one of the facilities, it is possible that fewer emissions reductions would be realized by full litigation of this matter than under the consent decrees.  It is therefore reasonable for Plaintiffs to enter into a settlement that ensures emissions reduction and recovers civil penalties.  See Cannons Eng'g, 899 F.2d at 90 ("the reasonableness of a proposed settlement must take into account foreseeable risks of loss").

6.     Second, the decrees are procedurally fair.  "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance."  See Cannons Eng'g, 899 F.2d at 86.   Here, negotiations were conducted in good faith and at arms length.  The parties undertook extensive negotiations prior to the commencement of this action, and those efforts continued after the filing of the Complaint.  Moreover, the consent decrees were published for public comment, and no opposition was heard.[3]  This Court is therefore satisfied that the consent decrees are procedurally sound.

7.     Third, this Court finds that the terms of the consent decrees are substantively fair.  "The terms of a consent decree are substantively fair if they are based on the comparative fault and if liability is apportioned in relation to rational estimates of the harm each party has caused."  United States v. Fort James Operating Co., 313 F.Supp.2d 902, 908 (E.D.Wis. Mar. 19, 2004) (citing Cannons Eng'g, 899 F.2d at 87).

A review of the consent decrees reveals that comparative fault has been considered.  The consent decree involving the NRG Defendants, who now run the facilities, but were not responsible for the modifications undertaken without the proper permits and emissions controls, requires a reduction in emissions and the retiring of certain units.  The consent decree involving Niagara Mohawk, who owned the facilities at the time of the modifications, requires a considerable civil penalty, the funding of environmental mitigation projects, and the transfer of some 2,800 acres of land to the State for preservation.  Thus, this Court finds that the parties have fully considered the issue of comparative fault and

---

[3]Counsel reported at oral argument on the Motion to Approve that one group sought modification of some of the terms of the consent decrees, but did not oppose entry of the decrees overall.  Counsel indicated that this group's concerns have been addressed.

have allocated liability accordingly.  Cf. Alliedsignal, 62 F.Supp.2d at 723 (finding proposed consent decree unreasonable because it did not rationally apportion liability among the defendants).

8.     Finally, this Court finds that the consent decrees serve the purposes of the Clean Air Act, which is to promote the public health and welfare by protecting and enhancing the quality of the nation's air, and to encourage and assist in the development and operation of regional air pollution prevention and control programs.  42 U.S.C. §§ 7401(b)(1) and (4).   Under this settlement, Plaintiffs will achieve emissions reduction, secure the retirement of the most polluting units, recover civil penalties and funds for environmental mitigation projects, and preserve 2,800 acres of land.

9.     For the reasons discussed above, this Court finds that the consent decrees are reasonable, fair and consistent with the purposes of the Clean Air Act.  It is for these reasons that this Court approved the consent decrees (filed at Docket No. 129) on June 6, 2005.

IT HEREBY IS ORDERED, that consistent with this Court's June 6, 2005 Order, the consent decrees (filed at Docket No. 129) are APPROVED and ORDERED by this Court.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: October 18, 2005
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

5